**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Steven Nemeth, | No. CV-12-02242-PHX-DGC |
| Plaintiff, | **ORDER** |
| v. | |
| Carolyn W. Colvin, Acting Commissioner of Social Security, | |
| Defendant. | |

Pursuant to 42 U.S.C. § 405(g), Plaintiff Steven Nemeth seeks judicial review of the Commissioner's decision finding him not disabled within the meaning of the Social Security Act. For the reasons that follow, the Court will grant Plaintiff's motion and remand the case for further proceedings.

**I.    Background.**

Plaintiff applied for disability insurance benefits and supplemental security income in January 2008, alleging disability due to multiple conditions beginning in January 2007. Doc. 23 at 2. After a hearing on February 1, 2011, an Administrative Law Judge ("ALJ") issued an opinion finding Plaintiff was not disabled as of December 31, 2010. *Id.* at 13. That decision was ratified by the Appeals Council and became the Commissioner's final decision.

**II.   Legal Standard.**

Defendant's decision to deny benefits will be vacated "only if it is not supported by substantial evidence or is based on legal error." *Robbins v. Soc. Sec. Admin.*, 466 F.3d

880, 882 (9th Cir. 2006).  "'Substantial evidence' means more than a mere scintilla, but less than a preponderance, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.*  In determining whether the decision is supported by substantial evidence, the Court must consider the record as a whole, weighing both the evidence that supports the decision and the evidence that detracts from it.  *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998).  If there is sufficient evidence to support the Commissioner's determination, the Court cannot substitute its own.  *See Young v. Sullivan*, 911 F.2d 180, 184 (9th Cir. 1990).

**III.   Analysis.**

For purposes of Social Security benefits determinations, a disability is:

> the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

20 C.F.R. § 404.1505 (2012).  Determining whether a claimant is disabled involves a sequential five-step evaluation process.  The claimant must show (1) he is not currently engaged in substantial gainful employment, (2) he has a severe physical or mental impairment, and (3) the impairment meets or equals a listed impairment or (4) his residual functional capacity ("RFC") precludes him from performing his past work.  If at any step the Commissioner determines that the claimant is or is not disabled, the analysis ends; otherwise it proceeds to step five.  If the claimant establishes his burden through step four, the Commissioner bears the burden at step five of showing that the claimant has the RFC to perform other work that exists in substantial numbers in the national economy.  *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v) (2012).

Plaintiff argues that the decision of the ALJ is incorrect on three grounds.  First, the ALJ improperly discounted his subjective testimony.  Second, the ALJ failed to properly weigh medical opinions.  Finally, the ALJ failed to resolve inconsistencies between testimony of a vocational expert and the *Dictionary of Occupational Titles* and

thus failed to meet her burden at step five of the analysis.

### A.     Plaintiff's Subjective Testimony.

The ALJ must engage in a two-step analysis to evaluate the credibility of a claimant's subjective testimony.  "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'"  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)).  If the claimant meets this first test, and there is no evidence of malingering, then the ALJ "can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so."  *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).  The ALJ may consider at least the following factors when weighing the claimant's credibility: the claimant's reputation for truthfulness, inconsistencies either in the claimant's testimony or between his testimony and his conduct, the claimant's daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which claimant complains.  *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002) (citing *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997)).

At step one, the ALJ determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms."  AR. at 27.[1]  The ALJ concluded at step two, however, that "claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible[.]"  *Id.*

In support of her determination, the ALJ cited evidence from medical reports showing that between 2007 and 2010, Plaintiff had surgery on each shoulder and his range of motion improved as a result, with improvement in his level of pain.  *Id.*  The ALJ noted that Plaintiff reported that he "was not taking any medication for his shoulder pain" despite having insurance to pay for medications.  *Id.*  As to Plaintiff's ankle injuries, the ALJ cited medical reports showing that Plaintiff improved over time as well

---

[1] "AR" refers to the Administrative Record.

as the doctor's recommendation to proceed with a "conservative" treatment plan.  *Id.*  The ALJ noted that Plaintiff's heart medication was "relatively effective" at controlling his symptoms.  *Id.*  She also noted that an x-ray of Plaintiff's back in 2008 showed no evidence of any significant abnormalities and that Plaintiff was not prescribed any medications for his back.  *Id.*

The ALJ found that Plaintiff made inconsistent statements, such as alleging that he could not stand or walk for long periods and could spend "a couple of hours" on his feet before feeling any discomfort.  AR. 30.  Finally, the ALJ cited a 2009 treatment report where Plaintiff listed "foundry worker" as his occupation and stated that he needed disability paperwork because he was unable to perform his current job duties.  *Id.*  The ALJ found that this evidence suggested Plaintiff may have performed some work in 2009, even though his earnings report listed no income.  *Id.*

Plaintiff's brief contains a litany of cites to the record in support of his claim that he is disabled.  *See* Doc. 16 at 8-9, 11-12, 13-14.  Although Plaintiff contends that the ALJ is required to "discuss the evidence that both supports and detracts" from her conclusion (Doc. 16. at 1), this is a misstatement of the law.  *See Reddick*, 157 F.3d at 720 (stating that the *reviewing court* must weigh the evidence that supports and detracts from the Commissioner's conclusion).  The ALJ must provide specific, clear and convincing reasons to support her conclusion.

The Court finds that the ALJ's decision is supported by substantial evidence.  Plaintiff cites many places in the record that suggest disability, but the ALJ paid equal attention to the record.  She cited medical records from May 2007, August, September, and October 2008, April, May, and December 2009, and March, June, and November of 2010.  AR. 27-28.  She noted reports of stable or improved conditions, and that Plaintiff takes no pain medication despite having insurance to pay for it.  *Id.*  She noted inconsistencies between Plaintiff's claim and the record, and considered the opinions of relevant physicians.  *Id.* at 27-30.  Having considered the record evidence cited by Plaintiff and the ALJ, the Court concludes that the ALJ's decision is supported by

1  substantial evidence – such relevant evidence as a reasonable mind might accept as

2  adequate to support a conclusion.  *Robbins*, 466 F.3d at 882.  The Court also finds that

3  the ALJ provided specific, clear and convincing reasons for discounting Plaintiff's

4  testimony.  *Smolen*, 80 F.3d at 1282.

5       **B.**    **Physician Opinions.**

6      Plaintiff contends that the ALJ improperly gave little weight to the opinion of Dr.

7  Armas.  Doc. 16 at 15.  Plaintiff argues that Dr. Armas' opinion should be considered that

8  of a treating physician entitled to controlling weight.  *Id.*

9      The Ninth Circuit distinguishes between the opinions of treating physicians,

10  examining physicians, and non-examining physicians.  *See Lester v. Chater*, 81 F.3d 821,

11  830 (9th Cir. 1995).   Generally, an ALJ should give greatest weight to a treating

12  physician's opinion and more weight to the opinion of an examining physician than a

13  non-examining physician.  *See Andrews v. Shalala*, 53 F.3d 1035, 1040-41 (9th Cir.

14  1995); 20 C.F.R. § 416.927(d)(1)-(2) (2012).   The opinion of a treating or examining

15  physician "can only be rejected for specific and legitimate reasons that are supported by

16  substantial evidence in the record."  *Lester*, 81 F.3d at 830-31 (citing *Andrews*, 53 F.3d at

17  1043).

18      Although there is no test for determining whether a doctor should be considered a

19  "treating physician," based on the guidelines found in 20 C.F.R. § 404.1527(c), the ALJ's

20  determination that Dr. Armas is not a treating physician is appropriate.  *See* 20 C.F.R.

21  § 404.1527(c)(2)(i) (2012) (noting that "length of the treatment relationship" and

22  "frequency of examination" are factors taken into account when determining the weight

23  to be given to a medical opinion).  The ALJ noted that Dr. Armas saw the Plaintiff twice

24  for the purpose of completing disability paperwork and that she "ha[d] not actually

25  treated the claimant for any of his impairments or his complaints of pain."  AR. 29.

26      The ALJ provided specific and legitimate reasons for giving Dr. Armas' opinion

27  little weight.  In addition to the fact that Dr. Armas did not treat Plaintiff, the ALJ noted

28  that Dr. Armas first saw Plaintiff in the summer of 2010 for purposes of completing a

disability form, Dr. Armas incorrectly assumed Plaintiff was already receiving Social Security disability benefits, Dr. Armas' opinion "was not consistent with treatment records" the ALJ had already discussed at length in connection with Plaintiff's credibility, Dr. Armas opined that Plaintiff could not use his feet when in fact he can drive, and Dr. Armas "relied heavily upon claimant's subjective complaints." *Id.*; *see* 20 C.F.R. § 404.1527(c)(2)-(6) (listing factors to be considered when evaluating opinion evidence, including consistency with the record and support from objective evidence). The Court finds these conclusions to be supported by substantial evidence and to constitute specific and legitimate reasons for discounting Dr. Armas' opinion.

Plaintiff also challenges the weight given to the opinion of his orthopedic surgeon, Dr. Hatfield. Plaintiff contends that the ALJ erred by concluding that Dr. Hatfield's treatment records indicated a belief that Plaintiff was capable of light work, noting that he did not explicitly state that Plaintiff could do light work. Doc. 16 at 20. The ALJ quoted Dr. Hatfield's opinion that Plaintiff "was not able to return to his previous level of employment 'as there is not light duty at his foundry position,'" and concluded that Dr. Hatfield's statements indicated that "he feels the claimant is capable of light work." *Id.*

The Court does not view the ALJ's reading of Dr. Hatfield's opinion as legally incorrect or unsupported by substantial evidence. Dr. Hatfield explained Plaintiff's inability to return to work at the foundry by noting that the foundry had no light-work positions. If the ALJ finds that "a treating source's opinion on the issues of the nature and severity of [a claimant's] impairments is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [a claimant's] case record," the ALJ will give the opinion controlling weight. 20 C.F.R. § 404.1527(c)(2). Here, the ALJ found that Dr. Hatfield's opinion, as the ALJ read it, to be "consistent with the greater objective medical evidence of record, as well as his own treatment notes." AR. 29. Because that opinion is supported by substantial evidence in the record, the Court finds no error with the weight afforded to it by the ALJ.

Finally, the Plaintiff challenges the weight given to the opinion of Dr. Maloney, one of the State agency physicians that reviewed Plaintiff's case.  Plaintiff argues that Dr. Maloney's opinion was not properly supported with medical details and was contrary to the limitations assessed by the ALJ.  Doc. 16 at 21-22.  For example, Plaintiff notes that the only shoulder limitations found by Dr. Maloney were "frequent overhead reaching with the right shoulder" (*Id.* at 22), while the ALJ ultimately concluded that Plaintiff "is unable to push and pull hand controls with both upper extremities" (AR. 26).  Additionally, Dr. Maloney "found no sitting, standing or walking limitations, and no need for position changes" (Doc. 16 at 22), while the ALJ found that Plaintiff "requires the option to alternate between sitting and standing at will, not spending more than 45 minutes in one position" (AR. 26).

"The opinions of non-treating or non-examining physicians may . . . serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record."  *Thomas*, 278 F.3d at 957.  The ALJ noted that although such an opinion "does not as a general matter deserve as much weight as those of examining or treating physicians, this opinion does deserve some weight[.]"  AR. 29.  The fact that the ALJ ultimately reached different conclusions as to Plaintiff's limitations than those advanced by Dr. Maloney – finding more restrictions than Dr. Maloney – is not an indication of error.  The ALJ had the responsibility to review all evidence in the record and was "not bound by any findings made by State agency medical or psychological consultants[.]" 20 C.F.R. § 404.1527(e)(2)(i).  The fact that the ALJ chose to characterize Plaintiff's impairments as more limiting than Dr. Maloney shows that she did not simply defer to his analysis, but instead made her own review of the record.

Citing the ALJ's statement that Dr. Maloney "had the opportunity to review the medical record in its entirety, up to that point" (AR. 29; Doc. 16 at 22), Plaintiff argues that Dr. Maloney's report was not based on an adequate review of the record.  Plaintiff's interpretation of "up to that point" is misplaced.  The Court interprets this language to mean that Dr. Maloney reviewed all medical records available at the time of his report.

The fact that the report was rendered at an earlier stage in the administrative process does not mean it may not be considered. *See* 20 C.F.R. § 404.1527(c) ("[W]e will evaluate every medical opinion we receive."). The Court accordingly finds no error in the ALJ's consideration of this opinion.

### C.     Inconsistency with Dictionary of Occupational Titles.

Plaintiff argues that the ALJ failed to resolve inconsistencies between the vocational expert's testimony and the *Dictionary of Occupational Titles* ("DOT") during her step-five analysis. Doc. 16 at 26. Plaintiff offers no legal support for this argument in his opening brief. In his reply brief, Plaintiff cites *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007), as support for his claim that "legal error exists." Doc. 27 at 16. In *Massachi*, the Ninth Circuit held that an ALJ may not "rely on a vocational expert's testimony regarding the requirements of a particular job without first inquiring whether the testimony conflicts with the [DOT]." 486 F.3d at 1152. "The ALJ must first determine whether a conflict exists. If it does, the ALJ must then determine whether the vocational expert's explanation for the conflict is reasonable and whether a basis exists for relying on the expert rather than the [DOT]." *Id.* at 1153.

A conflict between the DOT and the vocational expert did exist in this case. The vocational expert testified that Plaintiff could perform work as a parking lot cashier and that, in her opinion, the job was unskilled (SVP 2), although it is listed in the DOT as semi-skilled – SVP 3. AR. 31; AR. 76. Plaintiff argues that the DOT's classification of "the parking lot cashier job as requiring a SVP of three" and the ALJ's classification of the job as SVP 2 based on the testimony of the vocational expert is an "unsupported conclusion." AR. 31-32. The ALJ did not explicitly ask the vocational expert whether her assessment of the parking lot cashier job conflicted with the DOT, but the conflict was apparent from her testimony. AR. 76. The ALJ identified the conflict herself and asked the vocational expert for an explanation. *Id.* The vocational expert stated "I don't believe it's an SVP 3 though because it just generally takes less than 30 days to train as a cashier." *Id.* In her opinion, the ALJ noted that she "considered this a minor variation

from the D.O.T., and accept[ed] the vocational expert's testimony." AR. 32.

Other than observing that it was a "minor variation," the ALJ did not provide a basis for relying on the vocational expert's opinion as required by the Ninth Circuit. The "minor variation" comment suggests that the ALJ did not consider the difference between the expert's opinion and the DOT to be substantial enough to warrant close examination, but it appears to be a pivotal difference in this case – potentially the difference between an award or denial of benefits. The Court will therefore vacate Defendant's decision and remand for further proceedings.

**IT IS ORDERED** that the ALJ's decision is reversed and this case is remanded for further proceedings consistent with this order. The Clerk shall terminate this action.

Dated this 16th day of October, 2013.

David G. Campbell
United States District Judge